The State of Nevada *v.* The Board of County Commissioners of Washoe County.

---

# THE STATE OF NEVADA *v.* THE BOARD OF COUNTY COMMISSIONERS OF WASHOE COUNTY.

CERTIORARI—PROVINCE OF THE WRIT. The province of the writ of certiorari extends only to the question of jurisdictional power.

BOARD OF EQUALIZATION OF SPECIAL AND LIMITED JURISDICTION. The Board of Equalization is of special and limited jurisdiction, and its record must show affirmatively the necessary jurisdictional facts.

EQUALIZATION—REDUCTION OF ASSESSMENTS. Under the Revenue Act of 1866 (Stats. of 1866, 168, Sec. 15) the Board of Equalization has no power to reduce an assessment when the person complaining has refused to give the assessor a statement under oath of his property.

SWORN STATEMENT OF RAILROAD COMPANIES. Under the Revenue Act of 1869, (Stats. 1869, 184) the sworn statement as to the property of railroads, to be given to assessor for assessment purposes, must show affirmatively that the person making it is one of the persons named in the statute, and be subscribed by him.

FAILURE TO MAKE SWORN STATEMENT. The punishment prescribed for failure of a railroad company to make a sworn statement, as required by the Revenue Act of 1869, (Stats. 1869, 184, Sec. 3) is in addition to the penalty of exclusion from the benefits of equalization.

DEMAND FOR SWORN STATEMENT—BURDEN OF PROOF. Where a revenue Act provided that a sworn statement of the property of a railroad should be furnished on demand of the assessor, otherwise it should be deprived of the benefits of equalization; and, no proper statement being made, it was claimed by the railroad company that it did not appear that there had been any demand: *Held*, that the burden of proof was upon the railroad company desiring equalization to show the fact of neglect to make the demand.

CERTIORARI from the Supreme Court to the Board of County Commissioners of Washoe County, sitting as the Board of Equalization of that county.

The valuation of the property of·the Central Pacific Railroad Company in Washoe County, made September 9th, 1869, by William Thompson, County Assessor, was one million, two hundred and

| | |
|---|---|
| 5 | 317 |
| 6 | 97 |
| 7 | 92 |
| 7 | 97 |
| 9 | 89 |
| 9 | 367 |
| 12 | 19 |
| 12 | 31 |
| 12 | 169 |
| 12 | 183 |
| 12 | 222 |
| 5 | 317 |
| 21 | 17 |
| 21 | 176 |
| 23* | 800 |
| 26* | 226 |
| 5 | 317 |
| 23 | 283 |
| 5 | 317 |
| 26 | 124 |

three thousand, one hundred and thirty-nine dollars. The state-ment of John Corning fixed it at four hundred and seventy-five thousand, two hundred and eighty-two dollars and fifteen cents. The Board of Equalization reduced it to six hundred and fifty-six thousand three hundred and eighty-nine dollars. It was at the instance and upon the affidavit of William Thompson that the writ was issued.

By the Court, WHITMAN, J.:

On the first of October last the Board of County Commissioners of Washoe County, sitting and acting as a Board of Equalization, reduced the assessment for the present fiscal year of the Central Pacific Railroad Company of California, a corporation having a certain portion of its road and property in this State and the County aforesaid. Application being made to this Court for a writ of certiorari, the same was issued, and thereupon certain papers and minutes have been certified up, upon which decision is to be made.

No dispute exists between the contesting parties as to the office of the writ, and as that has been heretofore decided in this Court, (*Maynard* v. *Railey*, 2 Nev. 313) suffice it to say, that its province extends only to the question whether the Board acted within its jurisdictional powers. To settle that question, of course it is proper to review any or all evidence certified. (*Whitney* v. *The Board of Fire Delegates*, 14 Cal. 479.)

The grant of power to the Board will be found in the "Act to further amend an Act entitled an Act to provide Revenue for the support of the Government of the State of Nevada," approved March 1st, 1866, section fifteen, as follows: "The Board of Equalization shall have power to determine all complaints made in regard to the assessed value of any property, and may change and correct any valuation, either by adding thereto or deducting there-from, if they deem the sum fixed in the assessment roll either above or below its true value, whether said sum was fixed by the owner or assessor, except that in case where the person complaining of the assessment has refused to give the assessor his list under oath,

as required under this Act, no reduction shall be made by the Board of Equalization in the assessment made by the assessor."

The Board is, in this matter of equalization, of special and limited jurisdiction, and nothing in that regard is to be presumed in its favor. Its record must show affirmatively the necessary jurisdictional facts, else the inference is adverse. (*Whitney* v. *The Board of Fire Delegates,* 14 Cal. 479 ; *Finch* v. *Tehama County,* 29 Cal. 453 ; *Plummer* v. *Waterville,* 32 Maine, 566 ; *Rhode v. Davis,* 2 Ind. [Carter] 53.; *City of Lowell* v. *The County Comms. of Middlesex,* 3 Allen, 550.)

The record in this case discloses a paper purporting to be a statement from the railroad company, with this affidavit:

" STATE OF NEVADA, }
    County of Washoe. }

" John Corning, of the Central Pacific Railroad Company, being duly sworn, says : That the annexed statement contains a full, true, particular, and correct account of all the taxable property, and its true valuation, belonging to, or in the custody, or under the control of said railroad company, within the County of Washoe, State of Nevada, and that the statement here made as to the number of miles of said railroad within the State of Nevada, and the amount and value of the rolling stock used in the State of Nevada, is full, true, and correct.

" Subscribed and sworn to before me this seventeenth day of August, A.D. 1869.

                              " J. R. LOVEJOY,
                              " J. P., Verdi Township."

This paper is certified as being " a full, true, and correct copy of the original statement of property made by the said company and returned to the Assessor of Washoe County, Nevada, as used in evidence before the Board of Equalization in the matter of equalizing said company's taxes.""

A statute of this State entitled " An Act supplementary to an Act entitled an Act to provide Revenue for the Support of the Government of the State of Nevada, approved March 9th, 1865, and

the Acts amendatory thereof," approved March 6th, 1869, provides in its first section thus:

Section 1. " In all cases where a railroad is located and is being or has been constructed in or through two or more of the counties of this State, the President, Secretary, General Superintendent, or Managing Agent of the corporation, company, or persons owning the same, or some Managing Agent thereof within the county, shall, within a reasonable time after demand by the County Assessor of any county in or through which said road is being or has been constructed, furnish to said Assessor a statement under oath or affirmation, which shall be in writing, duly subscribed and sworn to before some officer within the State authorized by law to administer oaths setting forth    *    *    *."

The paper offered fails to comply with the statute in several important particulars: 1st. It does not show that the party making the affidavit was one of the persons made competent to render the statement by statute. It should affirmatively appear that he is such person, and he should also swear to the fact. (*Lindsay* v. *Sherman*, 5 How. Pr. R. 308; *Ex parte Bank of Monroe*, 7 Hill, 177; *Cunningham* v. *Goelet*, 4 Den. 71; *People* v. *Perrin*, 1 How. Pr. R. 75; *Hill* v. *Hoover*, 5 Wis. 354.)    2d. The affidavit is not subscribed. Upon this point the statute is peremptory. The language of the original and amendatory Acts differs from that of the supplemental above quoted, touching the statement and affidavit. They provide that the Assessor " shall demand    *    *    * a statement under oath or affirmation." These do not provide, save inferentially, for a written statement; nor do they require a subscription. Thereunder, perhaps, it would be sufficient to make an oral statement under oath or affirmation; and if the affidavit be written, it need not necessarily be subscribed; (*Jackson* v. *Virgil*, 3 Johns, 540; *Millius* v. *Shafer*, 3 Denio, 60; *Ede* v. *Johnson*, 15 Cal. 53); but otherwise under the supplemental Act. Therein, subscription is required; why, is not for this Court to inquire; but from the fact that the additional provision is made, it follows that it was deemed proper or necessary by the Legislature; and at all events, being required, it must be done, else the statement does not conform to the statute. (*Stone* v. *Marvel*, 45 N. H. 481; *Porter* v.

*Com's of Norfolk,* 5 Gray, 365 ; *Otis Co.* v. *Inhabitants of Ware,* 8 Gray, 509.)

It is claimed on behalf of the Board, that as the supplemental Act provides a punishment for non-compliance with the requirements of section one above quoted, therefore the further penalty of exclusion from the benefits of equalization should not and cannot be. imposed.

This is the provision of the Act referred to :

Sec. 3. "If any corporation, company, or persons owning such railroad fail, neglect or refuse, after being notified, to furnish a statement for assessment and taxation as provided in this Act, the County Assessor may proceed to make the assessments in the same manner as in other cases, as provided in the Act to which this Act is supplementary ; and any person upon whom a demand is made for a statement, as in this Act provided, failing, neglecting, or refusing to furnish the statement as required, without legal excuse, shall be subject to the same punishment as in other cases of such failure, neglect or refusal, as provided in the Act aforesaid."

A review of all the Acts will show, however, that a distinction is and should be made between punishment to the offending party and the power of the Board. The punishment referred to is prescribed in section six of the Act of 1866, to which the Act of 1869 is supplemental. It is probable that the punishment would have followed without the provisions of section three of the Act last named ; that may be considered the result of excessive caution.

The grant of power to the Board is contained in section fifteen of the Act of 1866, treating of other and different matter than that of section six. The two Acts are to be read together, one being supplemental to the other, and section fifteen applies to the Act as a whole ; otherwise, there is no power to equalize the assessments of railroad companies, as the only grant of power of equalization is to be found in the section referred to, and thereby the Board is explicitly deprived of power to reduce the assessment of a party refusing " to give the Assessor his list under oath, as required under this Act." What Act ? Why, the Act as a whole. The list to be given in one way by certain parties named ; in another, by rail-

road companies, whose form and requirements of list are prescribed in the Act of 1869.

It is further claimed that there is no proof that the Assessor ever demanded a statement of the party in question, and therefore it cannot be said that there was a refusal to render one, and that unless there was such refusal, the Board had jurisdiction. Aside from the general proposition that the officer must in this and similar instances be presumed to have done his duty until the contrary appears, (*Hartwell* v. *Root*, 19 John. 345) the burden of proof is upon the party desiring relief from the Board, to show the fact of the officer's neglect. (*Winnisimmet Co.* v. *Assessor Town of Chelsea*, 6 Cush. 477.)

That the Central Pacific Railroad Company so understood the law, is evident from the offer of the paper heretofore referred to in evidence. This is claimed as a substantial compliance with the statute; perhaps under some circumstances it might be, but as this is a jurisdictional question of power, neither this Court nor the Board of Equalization of Washoe County can deem any compliance substantial, save one literal.

The statute is plain and simple in its requirements. While it should not be so construed as to entrap the unwary, on the other hand its positive provisions cannot be frittered away by judicial interpretation. The Company failed to show the making of the statutory statement. Failure to make such is a refusal, under the statute. In such case, the Board of Equalization had no jurisdiction of the case upon complaint of undue assessment, and no right to reduce; and in attempting so to do, exceeded its powers.

It is therefore ordered and adjudged, that all the proceedings had by the Board of Equalization of Washoe County, State of Nevada, touching the reduction of the assessment of the Central Pacific Railroad Company of California, for the fiscal year 1869, be, and the same are hereby annulled.

Let judgment be entered accordingly.